IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LYNDA K. SALTER,
   Plaintiff,

vs.           Case No. 3:08cv189/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

## I.  PROCEDURAL HISTORY

   Plaintiff protectively filed an application for DIB on February 25, 2004, alleging that she became disabled on May 16, 2003 (Tr. 23, 58–60).[1]  The application was denied initially and on reconsideration (Tr. 36–37).  Thereafter, on September 18, 2006, Plaintiff appeared before an

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record, filed on July 16, 2008 (Docs. 5, 6).

Administrative Law Judge ("ALJ") for a hearing (Tr. 559–84). And, in a decision dated October 27, 2006, the ALJ concluded that Plaintiff was not "disabled," as that term is defined in the Act (Tr. 23–29). Plaintiff appealed the ALJ's determination to the Appeals Council, but the Appeals Council denied review (*see* Tr. 6–9, 13). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r. of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## II.     FINDINGS OF THE ALJ

On October 27, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 23–29):

1)      Plaintiff met the insured status requirements of the Act through December 31, 2008.

2)      Plaintiff has not engaged in substantial gainful activity ("SGA") since May 16, 2003, the date she alleges she became disabled.

3)      Plaintiff has the following severe impairments: dysautonomia with hypotension and hypertension, osteoarthritis, and degenerative disc disease of the lumbar spine.

4)      Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)      Plaintiff has the residual functional capacity ("RFC") to occasionally lift or carry no more than 10 pounds and frequently lift or carry less than 10 pounds; stand or walk no longer than 2 hours in an 8-hour day; and "occasionally" climb, balance, kneel, crouch, crawl, or stoop, with no exposure to machinery or heights.

6)      Plaintiff is capable of performing her past relevant work as a clerk. This work does not require the performance of work-related activities precluded by her RFC.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A

determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing SGA, she is not disabled.

2.      If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her

impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.    Personal History

Plaintiff was born on February 20, 1948, and at the time of her hearing before the ALJ she was fifty-eight (58) years old, with a high school education, one year of college, and past relevant work as a clerk with the Santa Rosa County Sheriff's Office ("SRCSO") (Tr. 28, 66, 80, 87).  In a disability report dated February 21, 2004, Plaintiff alleged disability due to "severe dysautonomia, orthostatic hypotension, severe hypertension, degenerative arthritis, osteoarthritis, gastroparesis, hypertensive heart disease, severe abdominal pain, dizziness, severe fatigue, rheumatic heart disease, [and] nausea," noting that she became unable to work on May 16, 2003 (Tr. 74, 81).  Plaintiff explained that she could no longer work because of fatigue, weakness, dizziness, and headaches, which affect her ability to dress, drive, stand and walk, and which cause her to have to lie down and rest (Tr. 74).  Plaintiff explained that she has "no warning when her blood pressure will drop to the point of fainting when I stand, [and] I have chest pain [and tightness], shortness of breath, severe headaches, [] joint pain constantly," and blurred vision "for long periods of time, without warning" (Tr. 81).  Plaintiff stated that when she eats she has severe abdominal pain, swelling, bloating and

fullness, and after standing for a few minutes her legs "feel like ants are biting [her]" (Tr. 81, 104). As a result, Plaintiff's "daily routine has completely changed" — she can no longer do "even light housework on most days," and her family does at least 90% of the household work (Tr. 81, 103–06).

At Plaintiff's hearing before the ALJ, held September 18, 2006, Plaintiff provided testimony that was generally consistent with the information provided on the disability report (*see* Tr. 55–84). For example, Plaintiff testified that near the end of her employment with the SRCSO, she "couldn't even walk in the building" because she would get very dizzy getting out of her car, and she felt fatigued, nauseous, and had headaches and vision problems (Tr. 563, 565). She stated that she has been diagnosed with dysautonomia, and when asked by the ALJ to describe this disorder, Plaintiff explained that it is a dysfunction of the autonomic nervous system, a system which controls, among other things, heart rhythm, blood pressure, saliva glands, sweat glands, and the stomach (Tr. 564). Plaintiff testified that as a result of the disorder her blood pressure will, without warning, drop 40 to 50 points when she stands up, which makes her feel like she is going to pass out, although she has never actually passed out, but she has fallen (Tr. 564–65). She testified that this can happen up to twice a day, and she has to rest thirty to forty minutes afterward (*id.*). Plaintiff also testified that if she bends over she will fall (Tr. 566–67). She further noted that as a result of osteoarthritis, she has weakened grip strength, and she drops things on a regular basis (Tr. 568–69). She also testified that she has headaches on a daily basis, and she rated their severity at an eight or nine on a ten-point scale (Tr. 571–72).

B.      Relevant Medical History

In February 2003, Plaintiff presented to Daniel D. Hickman, M.D., "complaining of a five-day history of malaise and myalgias, intermittent nausea," fever and chill, without emesis or abdominal pain (Tr. 335). Plaintiff returned on April 7, 2003, reporting continued fatigue, as well as weight loss, intermittent constipation, diarrhea, abdominal bloating and cramping, and mild epigastric discomfort (Tr. 333). Plaintiff returned just nine days later, on April 16, reporting nausea, lightheadedness, dizziness, and "usually" tiredness (Tr. 331).[2] Plaintiff returned on April 28, 2003, reporting some improvement after, apparently, following certain recommendations, such as

---

[2]On this occasion, Plaintiff was seen by Henry Neal Cook, M.D., because Dr. Hickman was out of town. On subsequent visits, she was seen by Dr. Cook, Dr. Hickman, or Jung Y. Gorton, M.D. (*see* Tr. 297–330).

increasing fluid and salt intake (*see* Tr. 326, 328).  Plaintiff was advised that she may be hypoglycemic, because she reported sometimes feeling better after eating, and it was recommended that she discontinue skipping breakfast (Tr. 326–27).  On May 19, 2003, Dr. Cook "authorize[d] family medical leave due to the unpredictable nature of [Plaintiff's] illness until it is specifically diagnosed and treated" (Tr. 323).  Plaintiff returned frequently thereafter, and progress notes through March 8, 2005, document complaints of dizziness, fever, nausea, fatigue, headaches, difficulty controlling her blood pressure, fluid retention, swelling in her legs, and pain in her ankles, knees, shoulders, and low back (Tr. 297, 302, 304, 309, 316, 319, 320, 324), with diagnoses of hypertension, possible hypoglycemia, hypotension, headaches, gastroparesis, dysautonomia, myalgias, blurred vision, hematuria (blood in urine), arthritic pain, and dizziness (Tr. 299, 302, 307, 309, 312, 323, 324).  On one visit, in May 2004, Dr. Gorton noted that Plaintiff "appears fatigued and becomes nauseated and mildly short of breath when she stands up for a period of time" (Tr. 304).

On June 21, 2004, upon referral from Dr. Gorton, Plaintiff underwent an Autonomic Nervous System examination, after exhibiting symptoms of near syncope (fainting), tachycardia (palpations), and fatigue (Tr. 236).  The examining physician, Charles R. Thompson, M.D., concluded from the examination that there was no evidence of any sympathetic or parasympathetic failure (Tr. 243).  In addition to medication, Dr. Thompson recommended "non-pharmacologic measures," such as avoiding excessive heat, stress, starchy meals and caffeine, increasing fluid intake, and beginning abdominal strengthening exercises and wearing an abdominal binder  (Tr. 239–40, 244).

On July 29, 2004, Plaintiff underwent an abdominal CT scan and pelvic ultrasound, as ordered by Dr. Gorton, after she complained of abdominal pain and hematuria (Tr. 347).  A "probable small right adrenal gland nodule" was observed, as was "probable fatty infiltration of the liver" and a suspected enlarged lymph node in the right groin (Tr. 345, 348).  There was, however, no evidence of an abdominal or pelvic mass, and Dr. Gorton noted that "the abdominal CT was essentially unremarkable" (Tr. 299, 343).

On December 6, 2004, Dr. Gorton completed a form titled "Assessment of Physical [RFC]" (Tr. 268–69).  Dr. Gorton opined Plaintiff could walk and stand "less than one hour" and sit only "two to four hours" in an eight-hour workday (Tr. 268).  He further opined that Plaintiff could occasionally lift ten to twenty pounds, but never twenty-five or more pounds, and that she was

restricted from climbing stairs or ladders, bending, and fine or gross manipulation (Tr. 268).  When asked to describe any impairment related to Plaintiff's sight, hearing, biannual dexterity, coordination, and kneeling, Dr. Gorton noted as follows: "blurred vision, arm weakness, to [sic] coordination, slow psychomotor.  Difficulty getting up/kneeling due to [] balance." (Tr. 269).  He also opined that Plaintiff would need to rest for fifteen minutes each hour, and that her medications cause headaches, chill bumps, an itchy scalp, dry mouth, and fatigue (*id.*).  Finally, Dr. Gorton noted that Plaintiff impairments have lasted, or could be expected to last, for twelve months (*id.*).

Also on December 6, 2004, Dr. Thompson completed an identical RFC form (Tr. 270–71).  He opined Plaintiff could walk and stand "less than one hour" and sit "two to four hours" in an eight-hour workday (Tr. 270).  He further opined that Plaintiff could occasionally lift five to ten pounds, but never more than ten pounds, and that she was restricted from climbing stairs or ladders and bending, but she was not restricted with regard to fine or gross manipulation (*id.*).  He also opined that Plaintiff would need to rest for fifteen minutes every one to two hours (Tr. 271).

On February 7, 2005, Plaintiff underwent a second Autonomic Nervous System examination (Tr. 283).  Dr. Thompson concluded from the examination that there was no evidence of any sympathetic or parasympathetic failure and no true evidence of any faulty baroreflex modulation, but there were elevations in Plaintiff's blood pressure during the recovery periods (Tr. 288).  He proposed modifying Plaintiff's medication regimen and stated that it was important to ascertain whether Plaintiff had been following the non-pharmacologic measures that had previously been recommended (*id.*).  He again recommended that Plaintiff increase her fluid intake and avoid excessive heat, stress, starchy meals, and caffeine (Tr. 285).  He also recommended that Plaintiff avoid bending, extreme fatigue, and prolonged standing (*id.*).

Finally, between June and August 2005, upon referral from Dr. Thompson, Plaintiff was occasionally seen by Michael Vandenberg, M.D., for musculoskeletal complaints, nausea, fatigue, and weight loss (*see, e.g.*, Tr. 400).  Relevant to the issues raised in this appeal, the court notes that on May 30, 2005, Dr. Vandenberg observed that Plaintiff's medications seemed to be controlling her blood pressure (Tr. 400), and on June 14, 2005, he noted that Plaintiff had low-grade osteoarthritis of the left knee that was minimally symptomatic (Tr. 399).

      C.     Other Relevant Information in Plaintiff's Claims File

           i.      Opinions of Non-Examining Agency Physicians

David Guttman, M.D, completed a Physical RFC Assessment on May 3, 2004 (Tr. 228–35). He opined that Plaintiff was able to frequently lift or carry ten pounds and occasionally lift or carry twenty pounds.  She could sit, stand or walk for six hours in an eight-hour workday (Tr. 229).  Her ability to push or pull is unlimited (*id.*).  She can occasionally climb, but never on ladders, ropes, or scaffolds, and she can frequently balance, stoop, kneel, crouch, and crawl (Tr. 230).  Additionally, Plaintiff should avoid hazards, such as machinery or heights, but she has no manipulative, visual, or communicative limitations (Tr. 231–32).

Another physician, Mary Elizabeth Seay, M.D., completed a Physical RFC Assessment on October 19, 2004 (Tr. 245–53).  Dr. Seay opined that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, and she could sit, stand, or walk for six hours in an eight-hour workday (Tr. 246).  Her ability to push or pull is unlimited (*id.*).  She can occasionally climb, kneel, crouch and crawl, but never stoop, and she can frequently balance (Tr. 247).  No manipulative, visual, or communicative limitations were established, but Plaintiff is to avoid all exposure to hazards, such as machinery or heights  (Tr. 248–49).

ii.     Opinions of Consultative Examiners

On April 15, 2006, Plaintiff underwent a consultative examination by Tom Kersch, M.D., on behalf of the Florida Disability Determination Services (Tr. 422–24).  Dr. Kersch noted, initially, that Plaintiff was able to bear weight on her heels and toes, and "squat down and come up to a standing position" (Tr. 423).  Plaintiff had negative straight leg raising tests in both seated and supine positions, negative impingement testing of the shoulders, no effusions in her hands or fingers, and good opposition strength bilaterally in her hands, with some tenderness to palpation over the base of her left thumb (*id.*).  Plaintiff's deep tendon reflexes "were 2+ and symmetric," sensory was intact, and cranial nerves II through XII were also intact (*id.*).  Finally, Plaintiff exhibited some unsteadiness with Romberg testing[3] and "was able to perform approximately five steps of heel-to-toe gait with slow, deliberate, movements" (Tr. 423–24).  In pertinent part, Dr. Kersch's "overall impression" was dysautonomia on multiple medications with a "probably medically related resting tremor" and some persistent unsteadiness, osteoarthritis primarily in the left thumb "with some

---

[3]"The Romberg Test is a neurological test to detect poor balance.  Specifically, it detects the inability to maintain a steady standing posture with the eyes closed."  http://www.mult-sclerosis.org/RombergTest.html
Case No.  3:08cv189/RV/EMT

intermittent cervical and lower lumbar non-radicular symptoms," hypertension, gastroparesis, and hyperlipidemia, with no evidence of rheumatoid arthritis (Tr. 424).

Following Plaintiff's examination Dr. Kersch completed two forms, including a "Range of Motion Report Form" dated April 15, 2006 (Tr. 425).  On this form Dr. Kersch noted that Plaintiff exhibited from 0 to 130 degrees of flexion of the left knee and 0 to 150 of the right knee, with 0 to 150 degrees being normal; full grip strength, bilaterally; lumbar spine forward flexion to 60 degrees with 90 degrees being normal; lateral flexion of the lumbar spine to 10 degrees, bilaterally, with 25 degrees being normal; forward flexion of the lumbar spine to 37 degrees, with 50 degrees being normal; lateral flexion to 30 degrees, bilaterally, with 45 degrees being normal; and rotation at 40 degrees, with 80 degrees being normal (*id.*).  Also on April 15, 2006, Dr. Kersch completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" (Tr. 427–30).  On this form Dr. Kersch opined that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds, and she could stand or walk less than two hours in an eight-hour workday, but she had no sitting limitations or any limitations in her ability to push or pull (Tr. 427–28).  Dr. Kersch further opined that Plaintiff could occasionally climb, balance, kneel, crouch, crawl or stoop, and that she was unlimited in her ability to perform overhead reaching in all directions, feeling, and gross or fine manipulation (Tr. 429).  With regard to environmental restrictions, Plaintiff was restricted only with regard to hazards, such as machinery or heights, because she was "unsteady/resting tremor[, and] on multiple meds," which preclude the safe handling of machinery (Tr. 430).

iii.     Testimony of the Vocational Expert ("VE")

A VE testified at Plaintiff's hearing before the ALJ (*see* Tr. 579–83).  In pertinent part the VE testified an individual with the limitations identified in Exhibits 11F and 13F, which are the physical RFC assessments of Dr. Guttman and Dr. Seay, could return to Plaintiff's past work (Tr. 580).  Moreover, if the limitations identified in Exhibit 12F at page four and 18F at page three, the opinions of Dr. Thompson (i.e., that Plaintiff should avoid stress, excessive heat and fatigue, etc. (*see* Tr. 239, 285)), were fully accepted, Plaintiff could return to her past work (Tr. 580–81).  Additionally, if the limitations identified by Dr. Kersch on the "Medical Source Statement of Ability to do Work-Related Activities" form (Tr. 427–30) were accepted as true, Plaintiff could similarly return to her past work (Tr. 581–82).  However, if the limitations identified by Dr. Thompson or Dr.

Gorton on their Physical RFC Assessments were accepted as true, Plaintiff would be capable of no SGA (Tr. 582).  Similarly, if Plaintiff's testimony was fully credible, Plaintiff would not be capable of performing SGA (*id.*).

V.      DISCUSSION

        Plaintiff raises two issues in the instant appeal.  Plaintiff asserts that the ALJ erred in his consideration of her complaints of pain and other subjective symptoms (Doc. 8 at 10–11).  Plaintiff additionally asserts that the ALJ improperly rejected opinions of Dr. Gorton and Dr. Thompson, treating physicians (*id.* at 8–10).[4]

        A.      Eleventh Circuit Pain Standard

        Plaintiff contends the ALJ failed to apply the Eleventh Circuit's three-part pain standard and improperly discredited her testimony concerning her disabling limitations.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam, 921 F.2d at 1216; Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

        The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  Wilson, *supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

        [4]For organizational purposes Plaintiff's arguments have been rearranged.

But "[w]hile both the Regulations and the <u>Hand</u> standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." <u>Elam</u>, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992) (citing <u>Walker v. Bowen</u>, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." <u>MacGregor</u>, 786 F.2d at 1054; <u>Holt</u>, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility,  . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. <u>Jones v. Dep't of Health and Human Serv's</u>, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the <u>Hand</u> standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." <u>Scharlow v. Schweiker</u>, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[5]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all

---

[5]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, 761 F.2d at 1548–49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, in considering Plaintiff's subjective complaints, the ALJ stated:

> After considering the evidence of record, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 26).

The ALJ then went on to describe the results of Dr. Lucey's consultative examination, the Autonomic Nervous Systems examinations, Dr. Kersch's consultative examination, and other medical records in the file (see Tr. 26–28).  The ALJ, however, failed to articulate any specific reason for discounting Plaintiff's subjective complaints.

Notwithstanding, the Commissioner urges this court to uphold the ALJ's findings, stating that "the ALJ noted a number of inconsistencies in support of his credibility finding" (Doc. 9 at 6). In support of this assertion, the Commissioner — much like the ALJ — merely summarizes certain medical evidence in the file.  The Commissioner then identifies purported inconsistencies between the medical evidence and Plaintiff's testimony.  For example, the Commissioner summarizes the results of Dr. Kersch's physical examination and then states, "Plaintiff's testimony at the hearing was inconsistent with her statements to Dr. Kersch" (Doc. 9 at 7).  This, however, is an inconsistency identified by the Commissioner, not the ALJ.  Similarly, the Commissioner compares Plaintiff's testimony with the results of Dr. Lucey's examination and the observations made by Dr. Vandenberg, described supra, and then states, "The ALJ properly discounted Plaintiff's credibility because of inconsistencies in the record as a whole." (Doc. 9 at 6–7).  However, again, these are inconsistencies identified by the Commissioner, not the ALJ.  Indeed, the Commissioner did not quote or identify any inconsistency allegedly noted by the ALJ, and a review of the entire decision of the ALJ reveals that the ALJ did not note any inconsistency.  Moreover, every reference to the

transcript that follows the Commissioner's assertion (i.e., that "the ALJ noted a number of inconsistencies in support of his credibility finding" (Doc. 9 at 6)) is a reference by the Commissioner to treatment notes or medical records, not to any portion of the ALJ's opinion (*id.* at 6–7). In short, it is the <u>Commissioner</u> who has provided reasons to support the ALJ's credibility findings, not the <u>ALJ</u>.

While the observations of Dr. Vandenberg and the results of Dr. Lucey's or Dr. Kersch's examinations may be inconsistent with Plaintiff's allegations, the ALJ did not state that he discounted Plaintiff's complaints on this basis — he merely summarized their records, along with the other medical records in the file. Moreover, it would be improper for this court to assume that the ALJ discounted Plaintiff's complaints on this basis because, not only was no such reason stated by the ALJ, but also because the conclusion is not obvious from the ALJ's opinion. As noted by the court in <u>Dyer</u>, "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination . . . cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." <u>Dyer</u>, 395 F.3d at 1210 (internal quotations and citations omitted). *See also* SSR 82-62 ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion."). Thus, even if there is enough evidence in the record to support the ALJ's decision, the decision cannot be upheld where (as here) the ALJ "broadly rejected" Plaintiff's complaints, failed to provide specific reasons underlying the rejection, and no reasons are obvious from a reading of the ALJ's opinion. Accordingly, the ALJ erred in discounting Plaintiff's subjective complaints.

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); <u>Holt</u>, 921 F.2d at 1223–24. A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. <u>Davis</u>, 985 F.2d at 534; *see also* <u>Bowen v. Heckler</u>, 748 F.2d 629, 636 (11th Cir. 1984) (if

the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes, 936 F.2d at 1219 ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam, 921 F.2d at 1216–17 (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").

Accepting Plaintiff's testimony as true, *see* MacGregor, 786 F.2d at 1054 (if a plaintiff's subjective complaints are rejected, the Commissioner must do so explicitly and give reasons for that decision — if he fails to do so, as a matter of law he has accepted that testimony as true), the VE has testified that Plaintiff could perform no available work (*see* Tr. 582). Thus, disability has been established without a doubt, and a remand with directions to enter a finding of total disability and award benefits is appropriate, as a remand for further proceedings would serve no purpose.

B.      Opinions of Plaintiff's Treating Physicians[6]

Plaintiff contends that the ALJ erred in his consideration of the opinions of Dr. Gorton and Dr. Thompson. As this court is well aware, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis, 125 F.3d at 1439-1441; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques,

---

[6]For the sake of completeness, or in the event the district court does not agree with the foregoing recommendation, the undersigned will address Plaintiff's remaining contentions.

and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner.  20 C.F.R. § 404.1527(e).

In according "no weight" to the opinions of Dr. Gorton and Dr. Thompson, as contained on their Physical RFC Assessments, the ALJ stated that each physician failed to qualify his remarks (Tr. 27).  Indeed, a review of Dr. Gorton's assessment confirms that he merely checked boxes on the form or provided only cursory responses, such as "arm weakness, slow psychomotor, difficulty getting up [or] kneeling" (*see* Tr. 268–69).  Similarly, Dr. Thompson only checked boxes and provided some brief responses, many of which are illegible (*see* Tr. 270–71).  None of the cursory responses provided by either physician, however, explain the restrictions they imposed with regard to walking, standing, sitting, lifting, carrying, bending, "fine/gross manipulation" (imposed by Dr. Gorton only), and "needing to rest" (*see* Tr. 268–71), which were the restrictions on which the VE's

testimony — that Plaintiff would be precluded from all work — was based (*see* Tr. 582).[7]  As noted *supra*, the ALJ may discount a treating physician's opinion if it is wholly conclusory.  *See* Phillips, 357 F.3d at 1240-41;  Edwards, 937 F.2d 580.

With regard to Dr. Gorton, the ALJ additionally noted that on August 24, 2004, Dr. Gorton reported that Plaintiff had an unremarkable CT scan, and he was unable to diagnose her condition (Tr. 27; *see also* 299–300).  *See* Edwards, 937 F.2d at 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

With regard to Dr. Thompson, the ALJ additionally referenced the opinions contained in his reports regarding Plaintiff's Autonomic Nervous System examinations, performed on June 21, 2004 and February 7, 2005 (*see* Tr. 26, 27).  As noted *supra*, the VE testified that if all of these opinions were accepted as true, Plaintiff was able to return to her past relevant work.  The ALJ next observed that the opinions in the reports were inconsistent with the opinions rendered by Dr. Thompson on the Physical RFC Assessment form (*see* Tr. 27).  For example, the only limitations noted by Dr. Thompson in his reports were that Plaintiff should avoid excessive heat, extreme fatigue, prolonged emotional stress, and prolonged standing and bending, but he stated no limitations with regard to sitting or walking (*see* Tr. 239–40, 244, 285).  This is particularly important because the VE characterized Plaintiff's past relevant work as sedentary, and the ALJ found that Plaintiff could return to that work (Tr. 579).  Thus, the ALJ's finding that Plaintiff could perform her past work is consistent with the narrative opinions offered by Dr. Thompson in his reports, and although the finding is inconsistent with the Dr. Thompson's opinions on the RFC Assessment, the ALJ articulated his reasons for discounting the latter opinions; namely, that they are conclusory and inconsistent with his treatment records.

Therefore, because the ALJ articulated his reasons for rejecting the opinions of Dr. Gorton and Dr. Thompson, and because the reasons stated were supported by substantial evidence in the

---

[7]Plaintiff contends that Dr. Gorton did provide an explanation for his opinions, referring the court to a treatment record dated July 23, 2004 (Doc. 8 at 9 (referencing Tr. 303)).  However, Dr. Gorton's treatment note merely states that Plaintiff should avoid standing "when she is volume depleted," and she should elevate her legs as much as possible (Tr. 303).  These purported explanations were not made contemporaneously with the RFC Assessment at issue, as the Assessment was completed in December 2004.  Moreover, the treatment note does not suggest that Plaintiff is always precluded from standing, she is only precluded from standing under certain, limited, circumstances.  For the same reasons, Plaintiff's argument based on a treatment note dated September 4, 2005 (*id.* (referencing Tr. 394)) is unconvincing.

record, Plaintiff is not entitled to reversal on this ground.  However, based on the ALJ's error with regard to his consideration of Plaintiff's subjective complaints, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See* 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F.3d at 1441 (reversing the Commissioner's decision and remanding with instructions that the claimant be awarded benefits).

Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner be **REVERSED**, that this action be **REMANDED** to the Commissioner to enter a finding of total disability and award disability benefits, and that the clerk be directed to close the file.

At Pensacola, Florida this 1<u>st</u> day of April 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LYNDA K. SALTER,
        Plaintiff,

vs.                                               Case No. 3:08cv189/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on February 25, 2004, alleging that she became disabled on May 16, 2003 (Tr. 23, 58–60).[1]  The application was denied initially and on reconsideration (Tr. 36–37).  Thereafter, on September 18, 2006, Plaintiff appeared before an

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record, filed on July 16, 2008 (Docs. 5, 6).

Administrative Law Judge ("ALJ") for a hearing (Tr. 559–84).  And, in a decision dated October 27, 2006, the ALJ concluded that Plaintiff was not "disabled," as that term is defined in the Act (Tr. 23–29).  Plaintiff appealed the ALJ's determination to the Appeals Council, but the Appeals Council denied review (*see* Tr. 6–9, 13).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r. of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.    FINDINGS OF THE ALJ

On October 27, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 23–29):

1)    Plaintiff met the insured status requirements of the Act through December 31, 2008.

2)    Plaintiff has not engaged in substantial gainful activity ("SGA") since May 16, 2003, the date she alleges she became disabled.

3)    Plaintiff has the following severe impairments: dysautonomia with hypotension and hypertension, osteoarthritis, and degenerative disc disease of the lumbar spine.

4)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)    Plaintiff has the residual functional capacity ("RFC") to occasionally lift or carry no more than 10 pounds and frequently lift or carry less than 10 pounds; stand or walk no longer than 2 hours in an 8-hour day; and "occasionally" climb, balance, kneel, crouch, crawl, or stoop, with no exposure to machinery or heights.

6)    Plaintiff is capable of performing her past relevant work as a clerk.  This work does not require the performance of work-related activities precluded by her RFC.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A

determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing SGA, she is not disabled.

2.     If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her

impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.   Personal History

Plaintiff was born on February 20, 1948, and at the time of her hearing before the ALJ she was fifty-eight (58) years old, with a high school education, one year of college, and past relevant work as a clerk with the Santa Rosa County Sheriff's Office ("SRCSO") (Tr. 28, 66, 80, 87).  In a disability report dated February 21, 2004, Plaintiff alleged disability due to "severe dysautonomia, orthostatic hypotension, severe hypertension, degenerative arthritis, osteoarthritis, gastroparesis, hypertensive heart disease, severe abdominal pain, dizziness, severe fatigue, rheumatic heart disease, [and] nausea," noting that she became unable to work on May 16, 2003 (Tr. 74, 81).  Plaintiff explained that she could no longer work because of fatigue, weakness, dizziness, and headaches, which affect her ability to dress, drive, stand and walk, and which cause her to have to lie down and rest (Tr. 74).  Plaintiff explained that she has "no warning when her blood pressure will drop to the point of fainting when I stand, [and] I have chest pain [and tightness], shortness of breath, severe headaches, [] joint pain constantly," and blurred vision "for long periods of time, without warning" (Tr. 81).  Plaintiff stated that when she eats she has severe abdominal pain, swelling, bloating and

fullness, and after standing for a few minutes her legs "feel like ants are biting [her]" (Tr. 81, 104). As a result, Plaintiff's "daily routine has completely changed" — she can no longer do "even light housework on most days," and her family does at least 90% of the household work (Tr. 81, 103–06).

At Plaintiff's hearing before the ALJ, held September 18, 2006, Plaintiff provided testimony that was generally consistent with the information provided on the disability report (*see* Tr. 55–84). For example, Plaintiff testified that near the end of her employment with the SRCSO, she "couldn't even walk in the building" because she would get very dizzy getting out of her car, and she felt fatigued, nauseous, and had headaches and vision problems (Tr. 563, 565).  She stated that she has been diagnosed with dysautonomia, and when asked by the ALJ to describe this disorder, Plaintiff explained that it is a dysfunction of the autonomic nervous system, a system which controls, among other things, heart rhythm, blood pressure, saliva glands, sweat glands, and the stomach (Tr. 564). Plaintiff testified that as a result of the disorder her blood pressure will, without warning, drop 40 to 50 points when she stands up, which makes her feel like she is going to pass out, although she has never actually passed out, but she has fallen (Tr. 564–65).  She testified that this can happen up to twice a day, and she has to rest thirty to forty minutes afterward (*id.*).  Plaintiff also testified that if she bends over she will fall (Tr. 566–67).  She further noted that as a result of osteoarthritis, she has weakened grip strength, and she drops things on a regular basis (Tr. 568–69).  She also testified that she has headaches on a daily basis, and she rated their severity at an eight or nine on a ten-point scale (Tr. 571–72).

B.    Relevant Medical History

In February 2003, Plaintiff presented to Daniel D. Hickman, M.D., "complaining of a five-day history of malaise and myalgias, intermittent nausea," fever and chill, without emesis or abdominal pain (Tr. 335).  Plaintiff returned on April 7, 2003, reporting continued fatigue, as well as weight loss, intermittent constipation, diarrhea, abdominal bloating and cramping, and mild epigastric discomfort (Tr. 333).  Plaintiff returned just nine days later, on April 16, reporting nausea, lightheadedness, dizziness, and "usually" tiredness (Tr. 331).[2]  Plaintiff returned on April 28, 2003, reporting some improvement after, apparently, following certain recommendations, such as

---

[2]On this occasion, Plaintiff was seen by Henry Neal Cook, M.D., because Dr. Hickman was out of town.  On subsequent visits, she was seen by Dr. Cook, Dr. Hickman, or Jung Y. Gorton, M.D. (*see* Tr. 297–330).

increasing fluid and salt intake (*see* Tr. 326, 328).  Plaintiff was advised that she may be hypoglycemic, because she reported sometimes feeling better after eating, and it was recommended that she discontinue skipping breakfast (Tr. 326–27).  On May 19, 2003, Dr. Cook "authorize[d] family medical leave due to the unpredictable nature of [Plaintiff's] illness until it is specifically diagnosed and treated" (Tr. 323).  Plaintiff returned frequently thereafter, and progress notes through March 8, 2005, document complaints of dizziness, fever, nausea, fatigue, headaches, difficulty controlling her blood pressure, fluid retention, swelling in her legs, and pain in her ankles, knees, shoulders, and low back (Tr. 297, 302, 304, 309, 316, 319, 320, 324), with diagnoses of hypertension, possible hypoglycemia, hypotension, headaches, gastroparesis, dysautonomia, myalgias, blurred vision, hematuria (blood in urine), arthritic pain, and dizziness (Tr. 299, 302, 307, 309, 312, 323, 324).  On one visit, in May 2004, Dr. Gorton noted that Plaintiff "appears fatigued and becomes nauseated and mildly short of breath when she stands up for a period of time" (Tr. 304).

On June 21, 2004, upon referral from Dr. Gorton, Plaintiff underwent an Autonomic Nervous System examination, after exhibiting symptoms of near syncope (fainting), tachycardia (palpations), and fatigue (Tr. 236).  The examining physician, Charles R. Thompson, M.D., concluded from the examination that there was no evidence of any sympathetic or parasympathetic failure (Tr. 243). In addition to medication, Dr. Thompson recommended "non-pharmacologic measures," such as avoiding excessive heat, stress, starchy meals and caffeine, increasing fluid intake, and beginning abdominal strengthening exercises and wearing an abdominal binder  (Tr. 239–40, 244).

On July 29, 2004, Plaintiff underwent an abdominal CT scan and pelvic ultrasound, as ordered by Dr. Gorton, after she complained of abdominal pain and hematuria (Tr. 347).  A "probable small right adrenal gland nodule" was observed, as was "probable fatty infiltration of the liver" and a suspected enlarged lymph node in the right groin (Tr. 345, 348).  There was, however, no evidence of an abdominal or pelvic mass, and Dr. Gorton noted that "the abdominal CT was essentially unremarkable" (Tr. 299, 343).

On December 6, 2004, Dr. Gorton completed a form titled "Assessment of Physical [RFC]" (Tr. 268–69).  Dr. Gorton opined Plaintiff could walk and stand "less than one hour" and sit only "two to four hours" in an eight-hour workday (Tr. 268).  He further opined that Plaintiff could occasionally lift ten to twenty pounds, but never twenty-five or more pounds, and that she was

restricted from climbing stairs or ladders, bending, and fine or gross manipulation (Tr. 268).  When asked to describe any impairment related to Plaintiff's sight, hearing, biannual dexterity, coordination, and kneeling, Dr. Gorton noted as follows: "blurred vision, arm weakness, to [sic] coordination, slow psychomotor.  Difficulty getting up/kneeling due to [] balance." (Tr. 269).  He also opined that Plaintiff would need to rest for fifteen minutes each hour, and that her medications cause headaches, chill bumps, an itchy scalp, dry mouth, and fatigue (*id.*).  Finally, Dr. Gorton noted that Plaintiff impairments have lasted, or could be expected to last, for twelve months (*id.*).

Also on December 6, 2004, Dr. Thompson completed an identical RFC form (Tr. 270–71). He opined Plaintiff could walk and stand "less than one hour" and sit "two to four hours" in an eight-hour workday (Tr. 270).  He further opined that Plaintiff could occasionally lift five to ten pounds, but never more than ten pounds, and that she was restricted from climbing stairs or ladders and bending, but she was not restricted with regard to fine or gross manipulation (*id.*).  He also opined that Plaintiff would need to rest for fifteen minutes every one to two hours (Tr. 271).

On February 7, 2005, Plaintiff underwent a second Autonomic Nervous System examination (Tr. 283).  Dr. Thompson concluded from the examination that there was no evidence of any sympathetic or parasympathetic failure and no true evidence of any faulty baroreflex modulation, but there were elevations in Plaintiff's blood pressure during the recovery periods (Tr. 288).  He proposed modifying Plaintiff's medication regimen and stated that it was important to ascertain whether Plaintiff had been following the non-pharmacologic measures that had previously been recommended (*id.*).  He again recommended that Plaintiff increase her fluid intake and avoid excessive heat, stress, starchy meals, and caffeine (Tr. 285).  He also recommended that Plaintiff avoid bending, extreme fatigue, and prolonged standing (*id.*).

Finally, between June and August 2005, upon referral from Dr. Thompson, Plaintiff was occasionally seen by Michael Vandenberg, M.D., for musculoskeletal complaints, nausea, fatigue, and weight loss (*see, e.g.*, Tr. 400).  Relevant to the issues raised in this appeal, the court notes that on May 30, 2005, Dr. Vandenberg observed that Plaintiff's medications seemed to be controlling her blood pressure (Tr. 400), and on June 14, 2005, he noted that Plaintiff had low-grade osteoarthritis of the left knee that was minimally symptomatic (Tr. 399).

      C.     Other Relevant Information in Plaintiff's Claims File

          i.      Opinions of Non-Examining Agency Physicians

David Guttman, M.D, completed a Physical RFC Assessment on May 3, 2004 (Tr. 228–35). He opined that Plaintiff was able to frequently lift or carry ten pounds and occasionally lift or carry twenty pounds.  She could sit, stand or walk for six hours in an eight-hour workday (Tr. 229).  Her ability to push or pull is unlimited (*id.*).  She can occasionally climb, but never on ladders, ropes, or scaffolds, and she can frequently balance, stoop, kneel, crouch, and crawl (Tr. 230).  Additionally, Plaintiff should avoid hazards, such as machinery or heights, but she has no manipulative, visual, or communicative limitations (Tr. 231–32).

Another physician, Mary Elizabeth Seay, M.D., completed a Physical RFC Assessment on October 19, 2004 (Tr. 245–53).  Dr. Seay opined that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, and she could sit, stand, or walk for six hours in an eight-hour workday (Tr. 246).  Her ability to push or pull is unlimited (*id.*).  She can occasionally climb, kneel, crouch and crawl, but never stoop, and she can frequently balance (Tr. 247).  No manipulative, visual, or communicative limitations were established, but Plaintiff is to avoid all exposure to hazards, such as machinery or heights  (Tr. 248–49).

ii.     Opinions of Consultative Examiners

On April 15, 2006, Plaintiff underwent a consultative examination by Tom Kersch, M.D., on behalf of the Florida Disability Determination Services (Tr. 422–24).  Dr. Kersch noted, initially, that Plaintiff was able to bear weight on her heels and toes, and "squat down and come up to a standing position" (Tr. 423).  Plaintiff had negative straight leg raising tests in both seated and supine positions, negative impingement testing of the shoulders, no effusions in her hands or fingers, and good opposition strength bilaterally in her hands, with some tenderness to palpation over the base of her left thumb (*id.*).  Plaintiff's deep tendon reflexes "were 2+ and symmetric," sensory was intact, and cranial nerves II through XII were also intact (*id.*).  Finally, Plaintiff exhibited some unsteadiness with Romberg testing[3] and "was able to perform approximately five steps of heel-to-toe gait with slow, deliberate, movements" (Tr. 423–24).  In pertinent part, Dr. Kersch's "overall impression" was dysautonomia on multiple medications with a "probably medically related resting tremor" and some persistent unsteadiness, osteoarthritis primarily in the left thumb "with some

---

[3]"The Romberg Test is a neurological test to detect poor balance.  Specifically, it detects the inability to maintain a steady standing posture with the eyes closed."  http://www.mult-sclerosis.org/RombergTest.html

intermittent cervical and lower lumbar non-radicular symptoms," hypertension, gastroparesis, and hyperlipidemia, with no evidence of rheumatoid arthritis (Tr. 424).

Following Plaintiff's examination Dr. Kersch completed two forms, including a "Range of Motion Report Form" dated April 15, 2006 (Tr. 425).  On this form Dr. Kersch noted that Plaintiff exhibited from 0 to 130 degrees of flexion of the left knee and 0 to 150 of the right knee, with 0 to 150 degrees being normal; full grip strength, bilaterally; lumbar spine forward flexion to 60 degrees with 90 degrees being normal; lateral flexion of the lumbar spine to 10 degrees, bilaterally, with 25 degrees being normal; forward flexion of the lumbar spine to 37 degrees, with 50 degrees being normal; lateral flexion to 30 degrees, bilaterally, with 45 degrees being normal; and rotation at 40 degrees, with 80 degrees being normal (*id.*).  Also on April 15, 2006, Dr. Kersch completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" (Tr. 427–30).  On this form Dr. Kersch opined that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds, and she could stand or walk less than two hours in an eight-hour workday, but she had no sitting limitations or any limitations in her ability to push or pull (Tr. 427–28).  Dr. Kersch further opined that Plaintiff could occasionally climb, balance, kneel, crouch, crawl or stoop, and that she was unlimited in her ability to perform overhead reaching in all directions, feeling, and gross or fine manipulation (Tr. 429).  With regard to environmental restrictions, Plaintiff was restricted only with regard to hazards, such as machinery or heights, because she was "unsteady/resting tremor[, and] on multiple meds," which preclude the safe handling of machinery (Tr. 430).

iii.    Testimony of the Vocational Expert ("VE")

A VE testified at Plaintiff's hearing before the ALJ (*see* Tr. 579–83).  In pertinent part the VE testified an individual with the limitations identified in Exhibits 11F and 13F, which are the physical RFC assessments of Dr. Guttman and Dr. Seay, could return to Plaintiff's past work (Tr. 580).  Moreover, if the limitations identified in Exhibit 12F at page four and 18F at page three, the opinions of Dr. Thompson (i.e., that Plaintiff should avoid stress, excessive heat and fatigue, etc. (*see* Tr. 239, 285)), were fully accepted, Plaintiff could return to her past work (Tr. 580–81).  Additionally, if the limitations identified by Dr. Kersch on the "Medical Source Statement of Ability to do Work-Related Activities" form (Tr. 427–30) were accepted as true, Plaintiff could similarly return to her past work (Tr. 581–82).  However, if the limitations identified by Dr. Thompson or Dr.

Gorton on their Physical RFC Assessments were accepted as true, Plaintiff would be capable of no SGA (Tr. 582). Similarly, if Plaintiff's testimony was fully credible, Plaintiff would not be capable of performing SGA (*id.*).

V.    DISCUSSION

Plaintiff raises two issues in the instant appeal. Plaintiff asserts that the ALJ erred in his consideration of her complaints of pain and other subjective symptoms (Doc. 8 at 10–11). Plaintiff additionally asserts that the ALJ improperly rejected opinions of Dr. Gorton and Dr. Thompson, treating physicians (*id.* at 8–10).[4]

A.    Eleventh Circuit Pain Standard

Plaintiff contends the ALJ failed to apply the Eleventh Circuit's three-part pain standard and improperly discredited her testimony concerning her disabling limitations. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam, 921 F.2d at 1216; Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

[4]For organizational purposes Plaintiff's arguments have been rearranged.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  Id.; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor, 786 F.2d at 1054; Holt, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility,   . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Dep't of Health and Human Serv's, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[5]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all

_____

[5]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, 761 F.2d at 1548–49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, in considering Plaintiff's subjective complaints, the ALJ stated:

> After considering the evidence of record, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 26).

The ALJ then went on to describe the results of Dr. Lucey's consultative examination, the Autonomic Nervous Systems examinations, Dr. Kersch's consultative examination, and other medical records in the file (see Tr. 26–28).  The ALJ, however, failed to articulate any specific reason for discounting Plaintiff's subjective complaints.

Notwithstanding, the Commissioner urges this court to uphold the ALJ's findings, stating that "the ALJ noted a number of inconsistencies in support of his credibility finding" (Doc. 9 at 6). In support of this assertion, the Commissioner — much like the ALJ — merely summarizes certain medical evidence in the file.  The Commissioner then identifies purported inconsistencies between the medical evidence and Plaintiff's testimony.  For example, the Commissioner summarizes the results of Dr. Kersch's physical examination and then states, "Plaintiff's testimony at the hearing was inconsistent with her statements to Dr. Kersch" (Doc. 9 at 7).  This, however, is an inconsistency identified by the Commissioner, not the ALJ.  Similarly, the Commissioner compares Plaintiff's testimony with the results of Dr. Lucey's examination and the observations made by Dr. Vandenberg, described supra, and then states, "The ALJ properly discounted Plaintiff's credibility because of inconsistencies in the record as a whole." (Doc. 9 at 6–7).  However, again, these are inconsistencies identified by the Commissioner, not the ALJ.  Indeed, the Commissioner did not quote or identify any inconsistency allegedly noted by the ALJ, and a review of the entire decision of the ALJ reveals that the ALJ did not note any inconsistency.  Moreover, every reference to the

transcript that follows the Commissioner's assertion (i.e., that "the ALJ noted a number of inconsistencies in support of his credibility finding" (Doc. 9 at 6)) is a reference by the Commissioner to treatment notes or medical records, not to any portion of the ALJ's opinion (*id.* at 6–7).  In short, it is the <u>Commissioner</u> who has provided reasons to support the ALJ's credibility findings, not the <u>ALJ</u>.

While the observations of Dr. Vandenberg and the results of Dr. Lucey's or Dr. Kersch's examinations may be inconsistent with Plaintiff's allegations, the ALJ did not state that he discounted Plaintiff's complaints on this basis — he merely summarized their records, along with the other medical records in the file.  Moreover, it would be improper for this court to assume that the ALJ discounted Plaintiff's complaints on this basis because, not only was no such reason stated by the ALJ, but also because the conclusion is not obvious from the ALJ's opinion.  As noted by the court in <u>Dyer</u>, "Although this circuit does not require an explicit finding as to credibility,  . . . the implication must be obvious to the reviewing court.  The credibility determination . . . cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole."  <u>Dyer</u>, 395 F.3d at 1210 (internal quotations and citations omitted).  *See also* SSR 82-62 ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained.  The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.").  Thus, even if there is enough evidence in the record to support the ALJ's decision, the decision cannot be upheld where (as here) the ALJ "broadly rejected" Plaintiff's complaints, failed to provide specific reasons underlying the rejection, and no reasons are obvious from a reading of the ALJ's opinion.  Accordingly, the ALJ erred in discounting Plaintiff's subjective complaints.

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts.  Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); <u>Holt</u>, 921 F.2d at 1223–24.  A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  <u>Davis</u>, 985 F.2d at 534; *see also* <u>Bowen v. Heckler</u>, 748 F.2d 629, 636 (11th Cir. 1984) (if

the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes, 936 F.2d at 1219 ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam, 921 F.2d at 1216–17 (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").

Accepting Plaintiff's testimony as true, *see* MacGregor, 786 F.2d at 1054 (if a plaintiff's subjective complaints are rejected, the Commissioner must do so explicitly and give reasons for that decision — if he fails to do so, as a matter of law he has accepted that testimony as true), the VE has testified that Plaintiff could perform no available work (*see* Tr. 582). Thus, disability has been established without a doubt, and a remand with directions to enter a finding of total disability and award benefits is appropriate, as a remand for further proceedings would serve no purpose.

B.      Opinions of Plaintiff's Treating Physicians[6]

Plaintiff contends that the ALJ erred in his consideration of the opinions of Dr. Gorton and Dr. Thompson. As this court is well aware, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis, 125 F.3d at 1439-1441; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques,

---

[6]For the sake of completeness, or in the event the district court does not agree with the foregoing recommendation, the undersigned will address Plaintiff's remaining contentions.

and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion. *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

In according "no weight" to the opinions of Dr. Gorton and Dr. Thompson, as contained on their Physical RFC Assessments, the ALJ stated that each physician failed to qualify his remarks (Tr. 27). Indeed, a review of Dr. Gorton's assessment confirms that he merely checked boxes on the form or provided only cursory responses, such as "arm weakness, slow psychomotor, difficultly getting up [or] kneeling" (*see* Tr. 268–69). Similarly, Dr. Thompson only checked boxes and provided some brief responses, many of which are illegible (*see* Tr. 270–71). None of the cursory responses provided by either physician, however, explain the restrictions they imposed with regard to walking, standing, sitting, lifting, carrying, bending, "fine/gross manipulation" (imposed by Dr. Gorton only), and "needing to rest" (*see* Tr. 268–71), which were the restrictions on which the VE's

testimony — that Plaintiff would be precluded from all work — was based (*see* Tr. 582).[7]  As noted *supra*, the ALJ may discount a treating physician's opinion if it is wholly conclusory.  *See* Phillips, 357 F.3d at 1240-41;  Edwards, 937 F.2d 580.

With regard to Dr. Gorton, the ALJ additionally noted that on August 24, 2004, Dr. Gorton reported that Plaintiff had an unremarkable CT scan, and he was unable to diagnose her condition (Tr. 27; *see also* 299–300).  *See* Edwards, 937 F.2d at 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

With regard to Dr. Thompson, the ALJ additionally referenced the opinions contained in his reports regarding Plaintiff's Autonomic Nervous System examinations, performed on June 21, 2004 and February 7, 2005 (*see* Tr. 26, 27).  As noted *supra*, the VE testified that if all of these opinions were accepted as true, Plaintiff was able to return to her past relevant work.  The ALJ next observed that the opinions in the reports were inconsistent with the opinions rendered by Dr. Thompson on the Physical RFC Assessment form (*see* Tr. 27).  For example, the only limitations noted by Dr. Thompson in his reports were that Plaintiff should avoid excessive heat, extreme fatigue, prolonged emotional stress, and prolonged standing and bending, but he stated no limitations with regard to sitting or walking (*see* Tr. 239–40, 244, 285).  This is particularly important because the VE characterized Plaintiff's past relevant work as sedentary, and the ALJ found that Plaintiff could return to that work (Tr. 579).  Thus, the ALJ's finding that Plaintiff could perform her past work is consistent with the narrative opinions offered by Dr. Thompson in his reports, and although the finding is inconsistent with the Dr. Thompson's opinions on the RFC Assessment, the ALJ articulated his reasons for discounting the latter opinions; namely, that they are conclusory and inconsistent with his treatment records.

Therefore, because the ALJ articulated his reasons for rejecting the opinions of Dr. Gorton and Dr. Thompson, and because the reasons stated were supported by substantial evidence in the

---

[7]Plaintiff contends that Dr. Gorton did provide an explanation for his opinions, referring the court to a treatment record dated July 23, 2004 (Doc. 8 at 9 (referencing Tr. 303)).  However, Dr. Gorton's treatment note merely states that Plaintiff should avoid standing "when she is volume depleted," and she should elevate her legs as much as possible (Tr. 303).  These purported explanations were not made contemporaneously with the RFC Assessment at issue, as the Assessment was completed in December 2004.  Moreover, the treatment note does not suggest that Plaintiff is always precluded from standing, she is only precluded from standing under certain, limited, circumstances.  For the same reasons, Plaintiff's argument based on a treatment note dated September 4, 2005 (*id.* (referencing Tr. 394)) is unconvincing.

record, Plaintiff is not entitled to reversal on this ground.  However, based on the ALJ's error with

regard to his consideration of Plaintiff's subjective complaints, the undersigned concludes that the

Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See*

42 U.S.C. § 405(g); Lewis, 125 F.3d at 1441 (reversing the Commissioner's decision and remanding

with instructions that the claimant be awarded benefits).

       Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C.

§ 405(g), that the decision of the Commissioner be **REVERSED**, that this action be **REMANDED**

to the Commissioner to enter a finding of total disability and award disability benefits, and that the

clerk be directed to close the file.

       At Pensacola, Florida this 1st day of April 2009.


                 /s/ *Elizabeth M. Timothy*
                 **ELIZABETH M. TIMOTHY**
                 **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

       **Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**